IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TRACTOR SUPPLY COMPANY,**
**Employer Below, Petitioner**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-211          (JCN: 2023002124)**

**MICHELLE HARPER,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Tractor Supply Company ("Tractor Supply") appeals the April 24, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Michelle Harper filed a response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order rejecting the claim and instead holding the claim compensable for a complete tear of the anterior cruciate ligament ("ACL") of the right knee.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 21, 2022, while employed as a "team member" for Tractor Supply, Ms. Harper was standing on the top tier of a three- or four-tier step ladder restocking cans of cat food. Ms. Harper "went to stand on [her] tippy toes to reach [the] back" when her right knee buckled. Ms. Harper attempted to step off the ladder and twisted her knee in the process. Ms. Harper sought treatment at MedExpress the following day and was diagnosed with a knee sprain by Randall Swain, M.D.

Ms. Harper returned to MedExpress on July 24, 2022, for a follow up and reported instability, locking of her knee joint, swelling, and diffuse pain anteriorly. MedExpress physician Benjamin Cook, M.D., ordered an MRI and released Ms. Harper to return to work on light duty. By order dated August 3, 2022, the claim administrator held the claim compensable for a right knee sprain. Ms. Harper returned to see Dr. Cook on August 4,

---

[1] Tractor Supply is represented by Jeffrey B. Brannon, Esq., and Loren C. Allen, Esq. Ms. Harper is represented by William B. Gerwig, III, Esq.

2022, and reported continued swelling and pain in her right knee. Dr. Cook diagnosed a knee sprain.

On August 26, 2022, Ms. Harper underwent an MRI of her right knee, which revealed a large full thickness/near complete tear of the ACL, tear and truncation of the medial meniscus, and moderate thinning of the medial compartment cartilage. The claim administrator authorized a referral for an orthopedic evaluation on September 8, 2022. Though not clear from the record, it appears as though at some point Dr. Swain referred Ms. Harper to Paul Legg, M.D., for surgery.

Ms. Harper was treated by Clark Adkins, M.D., and a physician's assistant in his office on October 7, 2022. Ms. Harper reported that she continued to have frequent episodes of her knee giving out, constant fluid and swelling in the knee, and numbness and tingling since her work-related injury. Dr. Adkins diagnosed right knee pain, right hip pain, rupture of the ACL, and a tear of the medial meniscus, and referred Ms. Harper to Dr. Legg. According to the Board, Ms. Harper saw Dr. Legg on October 11, 2022, and he diagnosed a complete tear of the ACL, recommended an ACL repair/augmentation or reconstruction, and took Ms. Harper off work pending re-evaluation.[2]

The claim administrator issued a new order on October 13, 2022, rejecting the claim. The order indicated that Ms. Harper did not sustain an injury in the course of and resulting from her employment. The following day, on October 14, 2022, the claim administrator denied authorization for a partial medial meniscectomy with allograft. The claim administrator indicated that Ms. Harper had sustained a new injury on October 7, 2022.

Ms. Harper completed an Employees' and Physicians' Report of Occupational Injury on November 10, 2022. Ms. Harper indicated that she injured her right hip, right side, right shoulder, and neck on October 6, 2022, as she was unpacking freight and her right knee gave out, causing her to trip over merchandise and fall. Dr. Legg completed the physicians' section of the form. By order dated November 11, 2022, the claim administrator denied Ms. Harper's application for benefits pertaining to the injury on October 7, 2022.

In December of 2022, Ms. Harper petitioned to reopen her claim for temporary total disability ("TTD") benefits, alleging that she was experiencing additional falls due to her knee injury. In support, Dr. Legg again diagnosed a complete tear of the ACL of the right knee and requested authorization for an ACL ligament repair/augmentation or reconstruction.

---

[2] The records from Dr. Legg's treatment were not included in the appendix record. However, they were submitted before the Board, and it made findings of fact regarding these records.

On February 28, 2023, Ms. Harper testified via deposition. Regarding the July of 2022 injury, Ms. Harper described standing on her toes on the top of a three- or four-tier step ladder trying to stack cat food when her knee buckled and started burning. Ms. Harper stated that she started to descend the ladder when it began to shake, causing her to twist her knee as she reached the ground. Ms. Harper testified that a subsequent MRI revealed a tear in her knee, but that she continued to work until October of 2022, when she sustained a second work-related injury. Specifically, Ms. Harper stated that she was injured in October when her knee gave out and she lost her balance, causing her to step on merchandise and fall, hitting the concrete floor. Ms. Harper indicated that she did not reinjure her right knee. According to Ms. Harper, following the October of 2022 injury, Dr. Legg took her off work until surgery could be performed on her knee. Ms. Harper denied having any issues with her right knee prior to the injuries other than occasional achiness from bending or stooping.

By order dated April 24, 2023, the Board (1) reversed the claim administrator's October 13, 2022, order, which rejected the claim, and held the claim compensable for a complete tear of the ACL of the right knee; (2) affirmed the October 14, 2022, order, which denied authorization for a partial medial meniscectomy with allograft; and (3) remanded the matter to the claim administrator to issue a protestable order addressing TTD benefits and granting or denying Dr. Legg's request for authorization for an ACL ligament repair/augmentation or reconstruction.

The Board addressed Tractor Supply's argument that Ms. Harper's knee giving out was insufficient to support a finding of compensability, noting that the Supreme Court of Appeals of West Virginia ("SCAWV") had recently addressed a similar issue in *Turley v. Blackhawk Mining*, No. 21-0649, 2023 WL 2782867 (W. Va. Apr. 5, 2023) (memorandum decision). The Board noted that in *Turley*, a claimant was injured while exiting a man trip, which is a low-to-the-ground vehicle. Specifically, when the claimant reached up to grab a bar and pull himself to his feet, he felt a pop in his lower back. The Board noted that the SCAWV had determined that the claim was compensable because exiting a low-to-the-ground machine was not an ordinary action of daily living.

The Board explained that, in the instant matter, Ms. Harper was performing her job duties when she was standing on her tiptoes on a ladder when her knee buckled and started burning, leading her to step off of the ladder and twist her knee. The Board concluded that, like in *Turley*, this activity was not an ordinary action of living and that Ms. Harper's injury was attributable to a definite, fortuitous occurrence in the course of and resulting from her employment.

While Tractor Supply alternatively argued that the only possible compensable condition in the claim would be a knee sprain, the Board found that Dr. Legg diagnosed a complete tear of the ACL and concluded it was caused by the work-related incident. As such, the Board held the claim compensable for a complete tear of the ACL of the right

knee. Regarding surgery, the Board noted that the claim administrator had issued an October 14, 2022, order denying authorization for a right knee partial medial meniscectomy with allograft. The Board found that the request for this surgery was not in the record and that, rather, Dr. Legg had requested authorization for an ACL repair/augmentation. As such, the Board remanded the matter to the claim administrator to determine and clarify the surgery requested and to issue a ruling on the same. Tractor Supply now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Tractor Supply argues that Ms. Harper failed to establish that she sustained an injury in the course of and resulting from her employment and that, as such, the Board erred in reversing the claim administrator's order and holding the claim compensable for a complete tear of the ACL of the right knee. According to Tractor Supply, Ms. Harper's knee giving out while on a ladder "could have happened anywhere, anytime, and thus did not occur as a result of her employment." Tractor Supply avers that there was nothing peculiar or unique about Ms. Harper's work environment that caused her injury and that going up and down a ladder is "a bodily movement common to many millions of people as part of their daily lives."

Tractor Supply further argues that the SCAWV has repeatedly upheld the denial of claims where a claimant suffered an idiopathic fall while on the employer's premises. Tractor Supply states that in *Baker v. Wheeling Island Gaming, Inc.*, No. 21-0309, 2022 WL 4299575 (W. Va. Sept. 19, 2022) (memorandum decision), the SCAWV upheld the

rejection of a claim where a claimant's knee buckled and she fell, noting that the claimant had not described an injury or an accident and that her knee buckling was more likely than not an idiopathic situation. Tractor Supply argues that, when viewing Ms. Harper's incident in light of the holding in *Baker*, it is clear that her allegations do not rise to the level of a compensable injury.

In sum, Tractor Supply argues that Ms. Harper's work environment did not increase her likelihood of injury, that standing on one's tiptoes is an ordinary action for millions of people daily and that, as such, her injury was not attributable to her employment. Tractor Supply alternatively argues that if Ms. Harper sustained a compensable injury, the claim should only be held compensable for a right knee sprain. We disagree.

For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Recently, this Court held in *Kittle v. ACNR Res., Inc.*, No. 22-ICA-204, __ W. Va. __, __ S.E.2d __, 2023 WL 3167482, at *3 (Ct. App. May 1, 2023), that "the claimant has the burden of establishing, by a preponderance of the evidence, that the injury complained of was caused by or contributed to some condition or aspect of employment that created an increased risk of injury."

While the Board did not have the benefit of this Court's holding in *Kittle* at the time its order was issued, we nonetheless find that it did not err in holding the claim compensable for a complete tear of the ACL of the right knee. We conclude that, per *Kittle*, Ms. Harper has demonstrated that her injury was caused by her employment or that her employment contributed to some condition or aspect that created an increased risk of injury. As the Board noted, standing on one's tiptoes on a ladder while stocking merchandise is not an ordinary activity of living and is sufficient to show an increased risk of injury.

Though Tractor Supply cites to *Baker* and argues that a myriad of cases support its position, these cases are easily distinguishable from the case at bar for various reasons. Specifically, the injuries in those cases were idiopathic in nature, were attributable to preexisting degenerative changes, were misdiagnosed, and/or were specifically attributed to non-occupational issues. Indeed, in *Baker*, the claimant had non-compensable conditions, such as severe degenerative right knee arthritis, that the lower tribunal found likely contributed to the claimant falling on multiple occasions. *Baker*, 2022 WL 4299575 at *3. Such is not the case here. Again, Ms. Harper was standing on a ladder on her tiptoes stacking merchandise when her knee buckled, and we find that this is sufficient to support a finding of compensability per *Barnett* and *Kittle*.

To the extent Tractor Supply claims that the only compensable injury possibly arising out of the claim is a knee sprain, we note that Ms. Harper was diagnosed with a

complete tear of the ACL of the right knee which, according to the Board, was attributed to her compensable injury by Dr. Legg. Tractor Supply has presented no medical evidence refuting Dr. Legg's opinion in this regard.

Accordingly, we find the evidence sufficient to support the Board's order reversing the claim administrator's order and holding the claim compensable for a complete tear of the ACL of the right knee, and we give deference to its findings. *See W. Va. Off. of Ins. Comm'r v. Johns*, No. 21-0811, 2023 WL 3968686, at *3 (W. Va. Jun. 13, 2023) (memorandum decision) ("This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review[.]").

For the foregoing reasons, we affirm the Board's April 24, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

6